# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SYLVIA A. HACKETT,

                                            Plaintiff,

   v.                                                            5:16-CV-692 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.

---

STEVEN R. DOLSON, ESQ., for Plaintiff
BENIL ABRAHAM, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

On September 21, 2012, plaintiff filed applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, both alleging disability beginning June 1, 2012. (Administrative Transcript ("T.") 154-67). The applications were denied initially on February 6, 2013. (T. 55-86). Administrative Law Judge ("ALJ") Elizabeth W. Koennecke held a hearing on May 7, 2014, at which plaintiff testified. (T. 40-54). Vocational Expert ("VE") Robert Baker testified at a a supplemental hearing before the ALJ on November 3, 2014. (T.

33-39). On November 5, 2014, the ALJ found plaintiff was not disabled. (T. 15-32). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 26, 2016. (T. 1-6).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in

2

> Appendix 1 of the regulations. If the claimant has such an impairment,
> the Commissioner will consider him [per se] disabled . . . . Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the claimant is unable to
> perform his past work, the Commissioner then determines whether there
> is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

3

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of the administrative hearing on May 7, 2014, plaintiff was 53 years old. (T. 43, 154). Plaintiff attended regular education classes in high school, but did not graduate. (T. 194). She subsequently obtained her general equivalency diploma. (T. 43, 194, 281). She had also taken several college courses, and completed training as a certified nurse's aide ("CNA"). (T. 43-44). At the time of the hearing, plaintiff resided with two of her daughters, ages eighteen and thirteen, and a two year old granddaughter. (T. 49).

All of plaintiff's prior employment had been in the health care field, as either a

4

CNA or a home health aide. (T. 211). Plaintiff injured her back in 2002 and received workers' compensation benefits, but subsequently returned to work. (T. 358). Plaintiff testified that she had "worked in pain" since 2002, but that her back and leg pain had steadily grown worse. (T. 51-52). Plaintiff testified that she could not stand for more than fifteen minutes or sit for more than twenty minutes without being in pain, and could not lift more than five or ten pounds. (*Id.*) Her most recent employment ended in June 2012, after a disagreement with a difficult client. (T. 45, 50-51, 211, 281). She had sought other work in her field, but believed that employers had not hired her once they became aware of her physical impairments. (T. 50-51).

Plaintiff also alleged mental impairments in her DIB and SSI applications. She recalled experiencing depression symptoms since childhood, and her treating physician had prescribed Cymbalta, an anti-depressant medication, since at least September 2012. (T. 254, 384). She first received outpatient psychiatric treatment in February 2013, and had attended three counseling sessions as of the date of the administrative hearing. (T. 380-405).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 21-24). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

IV. **ALJ's DECISION**

The ALJ determined that plaintiff met the insured status requirements through December 31, 2018, and that plaintiff had not engaged in substantial gainful activity

since her alleged onset date of June 1, 2012. (T. 20-21). The ALJ found that plaintiff's lumbar stenosis qualified as a severe impairment at step two of the sequential evaluation. (T. 21-24). She concluded that plaintiff's other impairments, including a mental impairment that was variously characterized as depressive disorder and posttraumatic stress disorder, were not severe.[1] At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 24).

The ALJ found at step four of the analysis that plaintiff had the RFC to lift and/or carry up to fifty pounds occasionally, twenty pounds frequently, and ten pounds continously; to sit, stand, and/or walk for eight hours during a workday; to frequently push and pull bilaterally; to handle, finger, feel, and reach in any direction; to operate foot controls; to balance, climb stairs, ramps, ladders, or scaffolds; and to frequently stoop. (T. 24-26). The ALJ found that plaintiff had no environmental limitations. (T. 24).

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 24). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and

---

[1] The ALJ applied the required "special technique" in her evaluation of the severity of plaintiff's mental impairments, in accordance with 20 C.F.R. § 404.1520a and 416.920a. (T. 22-24). Plaintiff has not challenged the ALJ's findings in that regard.

6

SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*)

The ALJ also found that plaintiff's statements alleging physical and mental disability were not fully credible in light of the record evidence. (T. 26). Relying on the VE testimony, the ALJ next determined that plaintiff was capable of performing her past relevant work as a home health aide. (T. 27-28). In light of this finding, the ALJ determined that plaintiff was not disabled from the alleged onset date, June 1, 2012, through the date of the decision. (T. 28).

## V. ISSUES IN CONTENTION

Plaintiff raises the following argument:

(1) The ALJ's credibility findings are unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing plaintiff's credibility. (Pl.'s Br. at 4-8, Dkt. No. 9).

Defendant argues that the Commissioner's determination, including the credibility analysis, was supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-12) (Dkt. No. 11). For the following reasons, this court agrees with the defendant and will dismiss the complaint.

## VI. CREDIBILITY

### A. Legal Standard

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### B. Application

At the hearing, plaintiff testified that she was unable to work due to lower back pain that radiated down her right leg and into her right foot. (T. 47). She estimated that she could only sit for about twenty minutes at a time before having to get up; could only walk about a quarter mile without resting; and could not stand for more than fifteen minutes without being in pain. (T. 47-48). Plaintiff also testified that bending and reaching were "very painful," and that her back pain prevented her from lifting or carrying items such as a gallon of milk. (T. 49).

The ALJ found that plaintiff's testimony regarding the disabling nature of her impairments was not fully credible. (T. 26). Plaintiff contends that the ALJ failed to support this credibility determination with substantial evidence by failing to adequately consider the seven factors listed above. (Pl.'s Br. at 6). In addition, plaintiff contends that the ALJ failed to inquire into the reasons for a perceived lack of treatment for plaintiff's impairments, and exaggerated the scope of plaintiff's daily activities. (Pl.'s Br. at 6-7). This court disagrees, and concludes that the ALJ's credibility determination was supported by substantial evidence.

The ALJ cited a number of factors that played a role in her credibility determination. For example, the ALJ noted the lack of objective medical evidence to support the restrictive physical limitations described by plaintiff. (T. 25-26). Dr. Kalyani Ganesh, whose opinion was assigned "significant weight" by the ALJ, performed a consultative examination of plaintiff on July 21, 2014. (T. 25, 358-366). Dr. Ganesh observed that plaintiff was in no acute distress, and had a normal gait. (T.

359). Plaintiff could not walk on heels and toes, and could not squat. (*Id.*) She used no assistive devices, could rise from a chair without difficulty, and required no help changing for the examination or getting on and off the examination table. (*Id.*)

During the consultative orthopedic examination, plaintiff's lumbar spine showed decreased flexion, extension, and rotary movement. (T. 359). Otherwise, Dr. Ganesh did not identify any significant issues with plaintiff's back, shoulders, or extremities. She reported that plaintiff's cervical spine showed full flexion, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*) Dr. Ganesh reported that plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles bilaterally. (T. 359-60). Plaintiff had full strength in her upper and lower extremities, and full grip strength in both hands. (*Id.*) Based on these findings, Dr. Ganesh opined that plaintiff had "no gross limitation to sitting, standing, or walking." (T. 360). She also found "mild to moderate" limitations with regard to lifting, carrying, pushing, and pulling. (*Id.*)

The ALJ also cited notes from plaintiff's treating sources that addressed the frequency and intensity of plaintiff's symptoms, and ran contrary to plaintiff's testimony. (T. 16-17). For example, plaintiff reported in visits with her treating physicians that pain medication, including hydrocodone and transforaminal nerve block injections, significantly controlled or alleviated her pain, although the injections typically wore off after about three weeks. (T. 258, 262, 267, 291, 370, 372, 376). Plaintiff and her physicians were reluctant to pursue surgery as an option. (T. 258, 267, 303). Instead, plaintiff's physicians recommended exercises that she could

perform at home to strengthen her back. (T. 370, 373).

The ALJ undertook a similar analysis of plaintiff's mental impairments, including her diagnosed depression. (T. 22-23, 26). At the time of her November 12, 2012 consultative psychiatric examination, plaintiff reported no history of psychiatric hospitalization or outpatient psychiatric treatment.[2] (T. 281). Plaintiff began psychiatric outpatient treatment in February 2012, although she had only attended three sessions at the time of the hearing. (T. 386-405).

Plaintiff's clinical psychiatric findings were generally consistent. During the consultative examination, plaintiff exhibited a depressed mood, but was cooperative with adequate social skills, appropriate eye contact, coherent thought processes, and intact attention and concentration. (T. 282-83). Her treating physician consistently described plaintiff as alert and oriented, with pleasant mood and affect. (T. 254, 260, 269, 288-89, 292, 295, 368-69). Treatment notes from plaintiff's treating psychiatrist, Dr. Paula Zobrowski, also reflect improvement in her depressive symptoms over the course of three visits. (T. 386-405). In the most recent notes, dated August 29, 2014, plaintiff reported that she was "much happier" since moving closer to her daughter and grandchildren. (T. 405). She had also reduced a significant source of stress by ending a difficult personal relationship. (T. 400, 405). On August 29, 2014, Dr. Zobrowski recommended that plaintiff maintain her medication at current levels, and

---

[2] The ALJ assigned "some weight" to the opinion of psychiatric consultative examiner Dennis Noia. She also assigned "great weight" to the opinion of state agency psychiatric consultant Dr. Kamin, who reviewed plaintiff's medical records. There were no treating source opinions in the record. Plaintiff has not challenged the weight that the ALJ assigned to this medical opinion evidence.

11

follow-up with another appointment in two to three months. (T. 405).

The treatment notes and consultative examination findings relied upon by the ALJ reflect a medical consensus that plaintiff's symptoms were controlled or improving under current treatment, and that plaintiff's current condition did not warrant more extensive measures or more frequent evaluation. (T. 284, 360, 370, 405). Therefore, although the ALJ did not question the plaintiff at her hearing regarding the reasons for the conservative treatment of her back injury and her limited psychiatric treatment history, the decision reflects a consideration of "other information in the case record," that addresses these issues. *See Hamilton v. Colvin*, 8 F. Supp. 3d 232, 240-41 (N.D.N.Y. 2013) (citing SSR 96-7p).

In addition to the medical evidence, the ALJ found that plaintiff's testimony was also inconsistent with her activities of daily living. (T. 23). During the July 2014 consultative examination, plaintiff reported that she was able to attend to her personal needs such as bathing and dressing herself, could cook once or twice a week, shop regularly, and do laundry. (T. 359). The ALJ noted that plaintiff was able to attend community college classes,[3] regularly attend church, and play BINGO once or twice a week. (T. 205, 218, 287). The ALJ also noted that plaintiff frequently cared for her young granddaughter during the day. (T. 359). Plaintiff contends that ALJ overstated the scope of plaintiff's child care duties, but the record shows that the ALJ had

---

[3] Plaintiff contends that the ALJ failed to adequately consider plaintiff's statement that walking on campus and sitting in class aggravated her back pain. (T. 287). However, plaintiff has offered no evidence to contradict the ALJ's factual finding that plaintiff had attended community college classes. (T. 26). Plaintiff also testified at the hearing that she had completed some college courses after her 2002 back injury. (T. 43-44).

12

substantial evidence on this point. When describing her daily activities in her 2012 application for benefits, plaintiff reported that she prepared her granddaughter's bottle and fed her, changed the infant's diapers, and put her down for a nap. (T. 201). At her 2014 hearing, plaintiff testified that she was unable to lift her now two year old granddaughter, but regularly prepared the toddler's breakfast, helped her in the bathroom, and changed diapers when necessary. (T. 50).

The decision reflects that the ALJ considered plaintiff's treatment record, the consultative examination findings, her documented daily activities, as well as plaintiff's testimony and her other self-reports of her functional limitations as part of the credibility assessment. Because the ALJ explained multiple valid reasons for her findings, her credibility determination, and the related RFC determination, were supported by substantial evidence.

## VII. **PRIOR WORK**

Plaintiff did not raise any direct challenge to the ALJ's determination that plaintiff could perform her prior work as a home health aide, so the court will only briefly address the issue. At step four of the disability analysis, the ALJ has the option to rely on VE testimony. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("A vocational expert or specialist *may* offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.")

13

(emphasis added). The ALJ elected to called a VE to testify at plaintiff's November 3, 2014 supplemental hearing. (T. 33-39).

Plaintiff had previously testified about her prior work. (T. 44-47). She visited patients in their home, and performed housecleaning, assisted with personal care, prepared meals, and assisted them on errands such as shopping or medical appointments. (T. 27, 44-47). The VE considered this job description and categorized the position as a home health aide, with a Dictionary of Occupational Title ("DOT") Code of 354.377-014. (T. 36-37). The ALJ asked whether a hypothetical individual with plaintiff's RFC could perform work as a home health aide. (T. 37-38). The VE testified that such an individual could perform such work, as generally performed. (T. 27, 38). Based upon the VE testimony, the ALJ concluded that plaintiff could perform her prior work as a home health aide, and found that plaintiff was not disabled. (T. 27-28). Because the ALJ's RFC determination was supported by substantial evidence, her hypothetical question to the VE contained the appropriate restrictions based on her analysis of the record, and her reliance on the VE's determination that plaintiff could perform her prior work was also supported by substantial evidence. Accordingly, the ALJ had substantial evidence for her conclusion that plaintiff was not disabled from June 1, 2012 through the date of her decision.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: April 13, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge